Date signed August 01, 2005



PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| JESSE BURNETT | : | Case No. 04-18415PM |
| ETHEL LOUISE BURNETT | : | Chapter 7 |
| | : | |
| Debtors | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| ABN AMRO MORTGAGE GROUP, INC. | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 04-1867PM |
| | : | |
| JESSE BURNETT | : | |
| ETHEL LOUISE BURNETT | : | |
| Defendants | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

### MEMORANDUM OF DECISION

     Before the court if the motion of the Debtors filed pursuant to § 523(d) of the Bankruptcy Code for attorney's fees incurred by them in connection with the defense of a dischargeability complaint filed by the Plaintiff. Section 523(d) of the Bankruptcy Code provides:

> **§ 523. Exceptions to discharge**
>     (d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharge, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

There is not dispute that the fees sought by counsel for the Defendants of $24,113.50 and costs of $1,510.80 are fair and reasonable.

In order to prevail on the underlying complaint, the Plaintiff would have had to prove each and every element of § 523(a)(2)(B). That section provides:

> **§ 523.  Exceptions to discharge**
> (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> \*             \*             \*             \*
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by
> \*             \*             \*             \*
> (B) use of a statement in writing--
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive.

There is no question that the papers prepared on behalf of the Plaintiff and presented to the Debtors to sign at the settlement on two loans were materially false statements relating to their financial condition, inasmuch as these statements contain no reference to the existence of an Indemnity Deed of Trust. Likewise, in every case under § 523(a)(2)(B), there is a factual question as to whether the Debtors caused the false statements to be published with the intent to deceive. That is an issue of fact that is determined by the trial judge.

What is in issue here is whether the Plaintiff, at the time of filing this Complaint, can be said to have met the requirements of § 523(a)(2)(B)(iii) when it pleaded and persisted in pursuing the allegations made in paragraphs 38, 47, 55, and 63, namely, that it reasonably relied upon the materially false representations of the Defendants contained in the 2002 Uniform Residential Loan Application, the 2002 Deed of Trust, the 2003 Uniform Residential Loan Application, and the 2003 Deed of Trust. The court found no such reliance on the part of the Plaintiff in making the loan or entering into the refinance agreement.

This case can be attributed to one factor, and one factor only, that is, a title examination ordered by the Plaintiff that did not reflect the Indemnity Deed of Trust in favor of Mellon Bank

so that the monies advanced on Behalf of the Plaintiff were junior to the lien of record. The Plaintiff did not rely on Debtors' representation. In answer to the court's question, "Sir, am I correct that you will not commit the funds without title insurance?," its witness, Kenneth Paisley, testified, "That is correct. We would not commit the funds until we are assured that we have a first lien." Whereupon, the court then asked, "And once it's insured?" The witness answered, "Correct." The Plaintiff's reliance was upon the existence of the title insurance policy that it had issued in its favor at the expense of the borrowers. By no stretch of the imagination could it be said that the reliance was upon either the matters in the Loan Application that it prepared, incomplete and inaccurate as it was being taken from other material and the statement buried in the Deed of Trust. This is why it obtained title insurance.

For the purposes of 11 U.S.C. § 523(d), a mortgage debt is a "consumer debt," making the Debtors eligible for relief under this section. *See generally, In re Kelly*, 841 F.2d 908, 913 (CA9 1988), (It is difficult to conceive of any expenditure that serves a "family ... or household purpose" more directly than does the purchase of a home and the making of improvements thereon.). *See also, Guaranty Savings & Loan Association v. Lowe*, 109 B.R. 698, 699 (W.D. Va. 1990).

Finally, the court must inquire as to whether the position of the creditor was substantially justified or if special circumstances make the reimbursement to Debtors of their costs incurred in defending this case unjust. This creditor sustained no loss because of the Debtors' papers signed after it committed to make the loan. The Debtors' false statement related to the condition of title that was to secure repayment of Debtors' obligation. To guard against this loss, the creditor compelled Debtors to purchase title insurance. Notwithstanding the full protection provided by the title insurance, the creditor filed this misguided action. The court finds neither special circumstance nor substantial justification to warrant the filing of this adversary proceeding by the Plaintiff.

An appropriate order will be entered.

cc:
Jeffrey M. Orenstein, Esq., 11300 Rockville Pike, Suite 408, Rockville, MD 20852
Craig M. Palik, Esq., McNamee, Hosea, etc., 6411 Ivy Lane, Suite 200, Greenbelt, MD 20770
Jesse/Ethel Burnett, 8639 B 16th Street, No. 180, Silver Spring, MD 20910
Cheryl E. Rose, Trustee, 50 W. Edmonston Drive, Rockville, MD 20852

**End of Memorandum**